FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE AUG 1 6 2018
_____
CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Disciplinary Proceeding Against<br><br>DAVID CARL COTTINGHAM,<br><br>      an Attorney at Law. | No. 201,704-5<br><br>En Banc<br><br>Filed     AUG 1 6 2018 |

WIGGINS, J.—Attorney David C. Cottingham embarked on a five-year boundary line dispute against his neighbor. His pursuit involved two lawsuits, four judicial appeals, two administrative appeals, countless motions, years of delay, unnecessary and wasteful expenditure of judicial resources, injury to his neighbors, and nearly $60,000 in sanctions for CR 11 violations. As a result, the Office of Disciplinary Counsel (ODC) charged Cottingham with violating the Rules of Professional Conduct (RPC). At the conclusion of the proceedings, the Washington State Bar Association (WSBA) Disciplinary Board (Board) recommended that Cottingham be suspended for 18 months. Cottingham appealed. We affirm the Board and suspend Cottingham for 18 months.

## FACTS

David Cottingham has practiced law since he was admitted to the bar in 1979 and has had no record of prior discipline. Cottingham and his wife own two lots on

Lake Whatcom, where they have lived since 1989. In 2006, Ronald J. and Kaye L. Morgan purchased a lot that shared a property boundary with the Cottinghams' land. When the Morgans purchased the lot, laurel bushes were growing near the boundary line, planted there by Cottingham before 1995. In 2007, the Morgans removed eight laurel bushes along the common boundary.

The First Lawsuit and the Trial

In June 2009, Cottingham and his wife filed a lawsuit against the Morgans, seeking title by adverse possession to a portion of the Morgans' property where the laurel bushes had been. The Morgans filed counterclaims, seeking to quiet title consistent with the platted boundary lines. The case went to trial in late 2010. Cottingham represented himself pro se and appeared as counsel for his wife. The trial judge held that Cottingham had adversely possessed 292.3 square feet of the Morgans' property and that the Morgans had wrongfully removed the laurel bushes.

The judge also found that the adversely possessed land was necessary to the Morgans' use and enjoyment of their lot and comparatively insignificant and unnecessary to the Cottinghams' use and enjoyment of their land. The judge condemned the land in favor of the Morgans and ordered the Morgans to pay the Cottinghams the fair market value of the land as well as trebled damages for the laurel bushes. The Morgans attempted to pay but Cottingham declined, so the Morgans deposited the full amount into the court registry.

After trial, Cottingham initiated and pursued repetitive and baseless legal challenges in an attempt to change the trial court's decision and to interfere with the

Morgans' use and enjoyment of their home. Cottingham's "court filings were often, but not always, unintelligible, rife with typographic and grammatical errors . . . ." Hr'g Officer's Findings of Fact, Conclusions of Law, Mitigating Facts & Recommended Sanction (Recommendation) at 15.

## The Appeals

In early 2012, after the trial court entered its decision, Cottingham appealed to the Court of Appeals. Before the first appeal had been completed, Cottingham filed a separate motion for discretionary review in the Court of Appeals, challenging a trial court order that required Cottingham to release a lis pendens on the Morgans' property. The Court of Appeals denied discretionary review, noting that the appeal was untimely and challenged issues not properly before the court. Cottingham filed a motion to modify, which the Court of Appeals held to be untimely and frivolous. The Court of Appeals sanctioned Cottingham $500.

While the first and second appeals were pending, Cottingham filed two administrative appeals, challenging Whatcom County's 2006 decision to issue the Morgans a building permit and its 2012 decision to issue a final occupancy certificate.

## The Second Lawsuit and Another Appeal

While the first, second, and administrative appeals were pending, Cottingham filed a second lawsuit against the Morgans under the Land Use Petition Act (LUPA), chapter 36.70C RCW. The trial court dismissed the LUPA lawsuit with prejudice and held that the lawsuit was frivolous, was "not supported by any fact or law or reasonable argument for any extension of existing law," and was "filed at least in part to harass

and/or annoy [the] Morgans." The trial court noted that Cottingham's pleadings were "chaotic, convoluted" and "required a substantial amount of time to understand and thoughtfully respond." Accordingly, the court held that Cottingham had violated CR 11, sanctioning him just over $25,000 in attorney fees and costs for the violation. Cottingham appealed the dismissal of the LUPA petition to the Court of Appeals.

The LUPA lawsuit served as the basis for ODC's count 2, a violation of RPC 3.1, against Cottingham. The hearing officer found that the LUPA lawsuit "was frivolous and filed to harass the Morgans." Recommendation at 7-8. In support, the hearing officer noted that LUPA review "is limited to judicial review of the 'final determination by a local jurisdiction's body or officer with the highest level of authority to hear [land use] appeals.'" *Id.* (alteration in original) (quoting RCW 36.70C.020(2)). Cottingham "was aware that there had been no such determination." *Id.*

<u>Court of Appeals Decisions and a Return to the Administrative Appeals</u>

In 2013, the Court of Appeals affirmed the trial court on all grounds in the first appeal. Cottingham filed a petition for review with this court. We denied review.

In 2014, the Court of Appeals affirmed the decision of the LUPA trial court on all grounds, including the trial court's decision to award fees for the CR 11 violation. The Court of Appeals also sanctioned Cottingham an additional $16,683 for filing a frivolous appeal. The court noted that "[a]n appeal is frivolous if it is so totally devoid of merit that there is no reasonable possibility of reversal" and held that the filing was frivolous because "this appeal presents no debatable issues." *Cottingham v. Morgan,*

4

No. 70218-1-I, slip op. at 13 (Wash. Ct. App. Apr. 28, 2014) (unpublished), http://courts.wa.gov/opinions/pdf/702181.pdf.

The disciplinary hearing officer also found that the appeal was frivolous and was pursued to harass the Morgans, noting that the arguments Cottingham put forth were "without legal authority or good faith basis." Recommendation at 11.

In its decision upholding the dismissal of Cottingham's LUPA petition, the Court of Appeals also declared that Cottingham had abandoned his administrative appeals. Two days later, Cottingham attempted to resurrect the administrative appeals. After a series of proceedings, a hearing examiner dismissed the administrative appeals with prejudice. The attempted resurrection of the administrative appeals served, at least in part, as the basis for ODC's count 4 against Cottingham. The hearing officer noted that Cottingham's attempt to resurrect the administrative appeals falsely stated that the land-use issues remained unresolved and that the Court of Appeals had remanded the case to the superior court. Recommendation at 11-12. The hearing officer found that the "filing and pursuit of the administrative appeal after the Superior Court had determined the issues and the Court of Appeals had affirmed was legally and factually unsupported and was made with the conscious objective of interfering with the Morgans' use and enjoyment of their premises." Recommendation at 17 (Conclusion of Law (CL) D).

<u>More Motions</u>

Less than two months later, Cottingham again attempted to challenge the boundary line decision. He sought leave to file a CR 60(b) motion alleging that the

Morgans' trial testimony was false. The trial court denied the motion and found that the "motion and allegations contained therein are not supported in law or fact." The trial court found that Cottingham violated CR 11 and sanctioned him $7,500. This motion served as the basis for ODC's count 1, a violation of RPC 3.1, against Cottingham. The hearing officer found that "[t]he motion was frivolous and was filed to perpetuate inconvenience and harassment of the Morgans" because "[f]actual support, legal support and relevance were almost entirely lacking." Recommendation at 12.

In December 2014, the trial court quieted title in the Morgans and removed the cloud on the title. Despite his lack of success and the sanctions against him, Cottingham continued the campaign. In December 2014, he filed a motion for reconsideration of the Supplemental Order Quieting Title. The trial court found that the motion violated CR 11 and sanctioned Cottingham $2,500. This motion served as the basis for count 3, a violation of RPC 3.1, against Cottingham. The hearing officer agreed, quoting the largely unintelligible language of the motion and noting that it "was frivolous and was intended to harass the Morgans." Recommendation at 13.

In February 2015, Cottingham filed a notice of appeal with the Court of Appeals, seeking to reverse the Supplemental Order Quieting Title and the order denying reconsideration. In March 2015, Cottingham moved to recall the mandate issued one year earlier. The court denied the motion, found that the motion was frivolous and ordered Cottingham to pay $1,500 to the Morgans "'for having to respond to a frivolous motion.'" Recommendation at 15.

In August 2015, Cottingham finally moved for the release of the funds that the Morgans had paid into the court registry, and the trial court released the funds to him.

<u>Disciplinary Proceedings</u>

Cottingham's five-year pursuit to change the trial court's decision regarding the boundary line resulted in over 700 filings and sanctions totaling $58,115.80. These sanctions were not imposed at the outset; in fact, Cottingham's initial lawsuit was not frivolous. Rather, the judges and hearing officers found violations and imposed sanctions only as each stage of the litigation progressed. Cottingham had ample warning that his arguments were unavailing and his continued pursuit was frivolous.

On November 9, 2015, ODC formally charged Cottingham with five counts of violating the Rules of Professional Conduct. The complaint alleged:

> Count 1 . . . By moving to reconsider, vacate the judgment, or grant a new trial after the first appeal, which motions were frivolous, Respondent violated RPC 3.1 (frivolous litigation).
>
> Count 2 . . . By filing the LUPA petition, which was frivolous, Respondent violated RPC 3.1.
>
> Count 3 . . . By filing the motion to reconsider after the trial court quieted title to the Morgans, which was frivolous, Respondent violated RPC 3.1.
>
> Count 4 . . . By filing one or more appeals that were frivolous and/or by attempting to pursue the administrative appeals after he abandoned them, Respondent violated RPC 3.1.
>
> Count 5 . . . By pursuing litigation and/or appeals before the trial court, the court of appeals, and/or the Whatcom County hearing examiner with intent to harass and/or annoy the Morgans, Respondent violated RPC 4.4 (using means that have no substantial purpose other than to burden a third person) and/or 8.4(d) (conduct prejudicial to the administration of justice).

Formal Compl. at 5-6 (formatting omitted). Cottingham denied the charges.

At the outset of the hearing, ODC moved to prevent Cottingham from challenging or relitigating the correctness of the underlying court rulings or arguing that they were erroneously made. Cottingham agreed and did not challenge the motion. He stipulated that within the disciplinary proceedings, he was not entitled to relitigate the underlying decisions or argue that those decisions were erroneous. The hearing officer found, "The court rulings on all substantive issues in the litigation giving rise to this complaint were legally and factually correct." Recommendation at 16.

The hearing officer found that Cottingham violated RPCs 3.1, 4.4(a), and 8.4(d) by knowingly and intentionally filing frivolous pleadings, inconveniencing and injuring the Morgans, and interfering with the administration of justice by consuming substantial judicial time and resources without justification.

The hearing officer found four aggravating factors (selfish motive, pattern of misconduct, multiple offenses, and substantial experience in the law), and three mitigating circumstances (no prior disciplinary record, uncontradicted testimony of good character and reputation, and satisfaction of all sanctions ordered against him).

Guided by the American Bar Association's *Standards for Imposing Lawyer Sanctions*, the hearing officer recommended that Cottingham be suspended from practicing law for 18 months. On September 27, 2017, the Disciplinary Board unanimously adopted the hearing officer's recommendation. Cottingham appealed the suspension to this court. We now uphold the Board's unanimous decision and suspend Cottingham from practicing law for 18 months.

ANALYSIS

I.  Standard of Review

The Washington State Supreme Court is the definitive authority for attorney discipline in Washington. *In re Disciplinary Proceeding Against Kuvara*, 149 Wn.2d 237, 246, 66 P.3d 1057 (2003). Unchallenged findings of fact are verities on appeal. *In re Disciplinary Proceeding Against Marshall*, 160 Wn.2d 317, 330, 157 P.3d 859 (2007). If the findings are challenged, this court will uphold findings of fact that are supported by substantial evidence. *In re Disciplinary Proceeding Against Guarnero*, 152 Wn.2d 51, 58, 93 P.3d 166 (2004). We review conclusions of law de novo, and when the Board is unanimous with regard to the recommended sanction, we will uphold its decision absent a clear reason to depart from it. *In re Disciplinary Proceeding Against Fossedal*, 189 Wn.2d 222, 233, 399 P.3d 1169 (2017).

II.  Findings of Facts and Conclusions of Law

*A. Findings of Fact*

An attorney challenging the evidence in front of this court must "present argument to the court why specific findings of fact 'are not supported by the evidence and . . . cite to the record to support that argument.'" *In re Disciplinary Proceeding Against Haskell*, 136 Wn.2d 300, 311, 962 P.2d 813 (1998) (quoting *In re Estate of Lint*, 135 Wn.2d 518, 532, 957 P.2d 755 (1998)); *see In re Disciplinary Proceeding Against Whitney*, 155 Wn.2d 451, 466-67, 120 P.3d 550 (2005) (declining to address challenges to findings that were insufficiently briefed). A challenging party must provide in its opening brief a separate assignment of error for each finding of fact being challenged. RAP 10.3(a)(4).

Here, Cottingham does not assign error to any specific finding of fact made by the hearing officer and adopted by the Board. Unchallenged findings of fact are verities on appeal. *Marshall*, 160 Wn.2d at 330. Thus, we view as true the facts found by the hearing officer and adopted by the Board.

Additionally, at the beginning of these proceedings, Cottingham stipulated that he was not entitled to relitigate the underlying property line issues or argue that the decisions by the trial and appeals courts were erroneous. The hearing officer found that "[t]he court rulings on all substantive issues in the litigation giving rise to this complaint were legally and factually correct." Recommendation at 16.

### B. Conclusions of Law

Based on the findings of fact, the hearing officer and the Board concluded that Cottingham violated RPC 3.1, RPC 4.4(a), and RPC 8.4(d) by intentionally and knowingly filing frivolous pleadings with the intent to harass and annoy his neighbors. Cottingham assigns error to the conclusions of law regarding counts 1 through 5 and argues that he did not violate RPC 3.1, 4.4(a), or 8.4(d).

### 1. RPC 3.1 and RPC 4.4(a)

RPC 3.1 states, "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous." RPC 4.4(a) states, "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person." This rule prohibits "conduct that has no substantial purpose other than to harass someone." ANNOTATED MODEL RULES OF PROF'L CONDUCT r. 4.4 (AM. BAR ASS'N 8th ed. 2015).

Here, Cottingham claims that his pleadings were not frivolous because the trial court's decision improperly and harmfully subdivided the Morgans' lot and that error must be corrected through administrative action. The hearing officer rejected this argument and instead found that Cottingham filed multiple frivolous pleadings with the intent to harass the Morgans.

A frivolous position is one that a lawyer of ordinary competence would recognize as being devoid of merit. *In re Disciplinary Proceeding Against Jones*, 182 Wn.2d 17, 41, 338 P.2d 842 (2014). Further, findings of motivation are given great weight on review. *Id.* at 42. "[M]otivation is difficult to prove" and so "the hearing officer will generally rely on circumstantial evidence" when making a conclusion regarding motivation. *Id.* at 41.

Here, the findings of fact support the hearing officer's conclusion that Cottingham's actions were frivolous and carried out with intent to harass and annoy the Morgans. Cottingham repeatedly filed motions and appeals that had no basis in law or fact and had already been decided by various trial and appellate courts. Cottingham's filings consistently failed in the courts and were repeatedly declared frivolous. This put Cottingham on notice of the meritless, frivolous, and sanctionable nature of his challenges. *In re Disciplinary Proceeding Against Sanai*, 177 Wn.2d 743, 769, 302 P.3d 864 (2013) (holding that a lawyer who repeatedly filed pleadings in multiple courts, all of which failed and many of which resulted in sanctions, was on notice of their frivolous nature). Even so, Cottingham continued his crusade and relentlessly pursued litigation intending, at least in part, to harass and annoy the

11

Morgans. For these reasons, we adopt the hearing officer and Board's conclusions that Cottingham violated RPC 3.1, and RPC 4.4(a).

2. RPC 8.4(d)

RPC 8.4(d) states that "[i]t is professional misconduct for a lawyer to: . . . engage in conduct that is prejudicial to the administration of justice." This rule applies to "violations of practice norms and physical interference with the administration of justice." *In re Disciplinary Proceeding Against Curran*, 115 Wn.2d 747, 766, 801 P.2d 962 (1990). Conduct that is prejudicial to the administration of justice is generally conduct carried out by an attorney in an official or advocatory role. *In re Disciplinary Proceeding Against Conteh*, 175 Wn.2d 134, 149, 284 P.3d 724 (2012). And, as ODC correctly points out, the "[p]ursuit of frivolous litigation frustrates the administration of justice by consuming substantial amounts of judicial resources and thereby violates practice norms." Answering Br. of the ODC at 39-40.

Cottingham's pleadings—repetitive, devoid of merit, and done with intent to harass his neighbors—were made in his role as an advocate for himself and his wife and were outside practice norms in violation of RPC 8.4(d). Thus, the unchallenged findings of fact support the hearing officer's conclusions of law that Cottingham engaged in conduct prejudicial to the administration of justice. We adopt the hearing officer and Board's conclusions that Cottingham violated RPC 8.4(d).

III. <u>Remaining Arguments</u>

Cottingham challenges the Board's decision on a variety of other grounds.[1] Many of his arguments contend that the disciplinary charges against him must be dismissed due to irregularities and errors in the underlying proceedings. He also claims that ODC violated his due process and First Amendment rights. U.S. CONST. amend. I. We conclude that all of these arguments are without merit.

*A. Validity of the underlying proceedings*

At the outset of the disciplinary proceedings, Cottingham stipulated that he is not entitled to contest the underlying trial and appellate court rulings. At the conclusion of the hearing, the hearing officer found that "[t]he court rulings on all substantive issues in the litigation giving rise to this complaint were legally and factually correct." Recommendation at 16. Thus, substantive arguments regarding the underlying proceedings are not properly before us, except to the extent that they help inform us as to the frivolousness of Cottingham's pleadings. *See Neilson v. Vashon Island Sch. Dist. No. 402*, 87 Wn.2d 955, 958, 558 P.2d 167 (1976) (where a party indicates that an issue has been withdrawn from contest, the party waives the necessity of proof of that issue by the opposing party).

---

[1] Cottingham provided nothing more than headings in support of his first eight objections. We do not address these objections because

> "[w]here no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none. Courts ordinarily will not give consideration to such errors unless it is apparent without further research that the assignments of error presented are well taken."

*State v. Young*, 89 Wn.2d 613, 625, 574 P.2d 1171 (1978) (quoting *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)).

### B. Cottingham received proper notice of the proceedings against him

Cottingham argues that ODC violated his due process rights because ODC failed to give him proper notice of the factual basis on which it would argue that Cottingham's actions were frivolous, ODC's refusal to admit that the Morgans had acted unlawfully, or the aggravating factors that ODC would seek.

First, a formal disciplinary complaint "'must state the respondent's acts or omissions in sufficient detail to inform the respondent of the nature of the allegations of misconduct.'" *Marshall*, 160 Wn.2d at 340 (quoting ELC 10.3(a)(3)). The formal complaint at issue gave Cottingham notice of the specific RPCs that he was charged with violating, and it is replete with specific detail as to the respondent's acts that serve as a basis for the charges. This is sufficient to satisfy the notice requirements of ELC 10.3.

Second, ODC is not required to put forth the evidence-based arguments that it intends to make on appeal. To the contrary, in the proceedings in front of the Board, ODC may argue any ground supported by the record on which the hearing officer's decision may be affirmed. *See, e.g., State v. Costich*, 152 Wn.2d 463, 477, 98 P.3d 795 (2004) (reviewing court may affirm lower court's ruling on any grounds supported by the record).

Third, ODC is not required to plead aggravating factors in the formal complaint. *In re Disciplinary Proceeding Against Starczewski*, 177 Wn.2d 771, 783, 306 P.3d 905 (2013).

Accordingly, we find no merit in Cottingham's due process argument.

### C. The First Amendment does not shield frivolous litigation from discipline

Cottingham seeks dismissal of the disciplinary charges, arguing that the First Amendment right to petition for redress to the courts protects his pursuit to change the trial court's decision. It is true, as Cottingham contends, that "disciplinary rules governing the legal profession cannot punish activity protected by the First Amendment, and [the] First Amendment protection survives even when the attorney violates a disciplinary rule he swore to obey when admitted to the practice of law." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1054, 111 S. Ct. 2720, 115 L. Ed. 2d 888 (1991).

However, "'baseless litigation is not immunized by the First Amendment Right to Petition.'" *In re Yelverton*, 105 A.3d 413, 421 n.8 (D.C. 2014) (quoting *In re Ditton*, 980 A.2d 1170, 1173 n.3 (D.C. 2009)). Once a respondent is "made aware that his motions were frivolous, their repeated assertion . . . [is] no longer in good faith and could be subject to reasonable sanction in order to enforce well-established standards of professional conduct." *Id.*; *see also Bill Johnson's Rests., Inc. v. Nat'l Labor Relations Bd.*, 461 U.S. 731, 743, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983) ("baseless litigation is not immunized by the First Amendment right to petition").

Here, Cottingham's initial lawsuit against the Morgans was not frivolous; there was a legitimate dispute, and it was proper to seek resolution in the court. However, Cottingham's frequent pleadings containing baseless, repetitive arguments were frivolous. The hearing officer appropriately found by a preponderance of the evidence

that Cottingham knowingly, intentionally, and repeatedly engaged in frivolous litigation. The Board adopted these findings.

The First Amendment does not protect frivolous litigation. Thus, while Cottingham is correct that attorney discipline rules may not prohibit or punish activity protected by the First Amendment, that protection is inapplicable here.

IV.    Sanction

The hearing officer recommended and a unanimous Board concluded that Cottingham should be suspended from practicing law for 18 months.

"[T]he ultimate responsibility for determining the nature of discipline rests with this court." *In re Disciplinary Proceeding Against Noble*, 100 Wn.2d 88, 95, 667 P.2d 608 (1983). We review sanctions de novo. *Jones*, 182 Wn.2d at 48. Nonetheless, in fulfilling this responsibility, we are guided by and give considerable weight to the recommendation of the Board. *Id.* All disciplinary matters not disposed of by stipulation or resignation are heard by a hearing officer and considered by the Board. *See Noble*, 100 Wn.2d at 94; ELC 9.1, 9.3. In contrast, the range of disciplinary matters considered by this court is narrower: though any attorney may seek discretionary review of any disciplinary decision, ELC 12.4, only those involving suspension or disbarment are appealable as a matter of right, ELC 12.3(a). *See Noble*, 100 Wn.2d at 94. Because the hearing officer and Board "consider the full spectrum of disciplinary matters from the most trivial to the most serious," they have "the opportunity to develop unique experience and perspective in the administration of sanctions." *Id.*

16

Though we are not bound by the recommendations of the Board, for several reasons we do "not lightly depart from recommendations shaped by this experience and perspective." *Id.* We appoint the members of the Board with the benefit of recommendations from the Disciplinary Selection Panel, which considers candidates for appointment recommended to it by the WSBA Board of Governors. ELC 2.3(b)(1). In recommending members to the Board, both the Disciplinary Selection Panel and the Board of Governors "consider[ ] diversity in gender, ethnicity, disability status, sexual orientation, geography, area of practice, and practice experience . . . ." ELC 2.2(f). The care exercised in selection of members of the Board and the required attention to diversity combine to increase our confidence in the Board.

Another important factor contributes to our confidence in the recommendations of the Board: the Board membership must include at least 4 nonlawyers and at least 10 lawyers. ELC 2.3(b)(1). We appoint these members as well, again based on recommendations of the Disciplinary Selection Panel and the Board of Governors. *Id.* One primary purpose of the attorney disciplinary system is to protect the public, and "[t]he severity of the sanction should be calculated to achieve these ends." *Noble*, 100 Wn.2d at 95 (noting that because "discipline is not imposed as punishment for the misconduct, . . . our primary concern is with protecting the public and deterring other lawyers from similar misconduct") The presence of nonlawyer members serves to ensure the protection of the public and gives the Board's recommendations further weight and importance.

17

We apply the ABA *Standards* in all lawyer discipline cases. *Id.* To arrive at the correct sanction, the court first determines the presumptive sanction and then determines whether mitigating or aggravating factors merit a departure from the presumptive sanction. *Id.* Then, if raised by the respondent, we consider whether the factors of unanimity and proportionality should alter the sanction. *In re Disciplinary Proceeding Against Christopher*, 153 Wn.2d 669, 678,105 P.3d 976 (2005).

To determine a presumptive sanction, the court considers (1) the ethical duty violated, (2) the lawyer's mental state, and (3) the extent of the actual or potential harm caused by the misconduct. *Id.* Here, the hearing officer applied ABA *Standards* 6.22 and determined that suspension was the presumptive sanction, and the Board unanimously agreed. The hearing officer also determined that the aggravating and mitigating factors did not warrant a departure from the presumptive sanction, and the Board agreed.

We will not depart from the presumptive sanction unless "the balance of aggravating and mitigating factors is 'sufficiently compelling.'" *In re Disciplinary Proceeding Against Del Carmen Rodriguez*, 177 Wn.2d 872, 888, 306 P.3d 893 (2013) (quoting *In re Disciplinary Proceeding Against Cohen*, 149 Wn.2d 323, 339, 67 P.3d 1086 (2003)). Here, the hearing officer found four aggravating factors (selfish motive, pattern of misconduct, multiple offenses, and substantial experience in the law) and three mitigating circumstances (no prior disciplinary record, testimony of good character, and satisfaction of all sanctions ordered against him). These factors are not sufficiently compelling to warrant a departure from the presumptive sanction.

Cottingham also contends that proportionality review requires us to depart from the presumptive sanction. In reviewing proportionality, "we analyze whether a presumptive sanction is proper by comparing the case at hand with other similarly situated cases in which the same sanction was approved or disapproved." *In re Disciplinary Proceeding Against Miller*, 149 Wn.2d 262, 285, 66 P.3d 1069 (2003). To determine whether a case is appropriately similar, we focus on "the misconduct found, the presence of aggravating factors, the existence of prior discipline, and the lawyer's culpability." *Conteh*, 175 Wn.2d at 152-53.

The attorney facing discipline bears the burden of bringing to the court's attention cases that demonstrate the disproportionality of the sanction imposed. *In re Disciplinary Proceeding Against Kagele*, 149 Wn.2d 793, 821, 72 P.3d 1067 (2003). Here, Cottingham does not engage in any comparative analysis of similarly situated cases and thus has failed to meet his burden of proving that an 18-month suspension is disproportionate.

Nonetheless, the 18-month suspension is proportionate when compared to other similarly situated cases. For example, in *In re Disciplinary Proceeding Against Sanai*, we held that disbarment was appropriate for Sanai's misconduct that involved repeated frivolous filings while he represented his mother in her divorce case. 177 Wn.2d 743. The hearing officer found that just 2 years after being sworn in as an attorney, *id.* at 759, Sanai violated the rules of professional conduct when he "filed multiple frivolous motions and claims for purposes of harassment and delay, repeatedly and willfully disobeyed court orders and rules, brought frivolous suits

against judges who ruled against him, and filed similar claims multiple times in multiple jurisdictions for purposes of delay," *id.* at 746.

Like Cottingham, Sanai was found to have filed frivolous pleadings in violation of RPC 3.1, burdening a third party in violation of RPC 4.4(a), and engaging in conduct prejudicial to the administration of justice in violation of RPC 8.4(d).

However, unlike Cottingham, Sanai was repeatedly held in contempt during the underlying proceedings. *Id.* at 748, 753, 755. As a result of his contemptuous behavior in the courtroom, the hearing officer found that in addition to filing frivolous pleadings, Sanai knowingly and willfully disobeyed court orders in violation of RPC 3.4(c) and RPC 8.4(j).[2] 177 Wn.2d at 746. Under RPC 3.4(c), an attorney shall not "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists," and under RPC 8.4(j), it is misconduct for an attorney to "willfully disobey or violate a court order directing him or her to do or cease doing an act which he or she ought in good faith to do or forbear."

Sanai's willful disobedience of the court heightens the seriousness of his misconduct in a manner absent in Cottingham's proceedings. Contemptuous behavior undermines the court's orderly and effective exercise of jurisdiction. It is "essential to the efficient action of the court and the proper administration of justice" that the authority of the court be respected, and that disobedient, contemptuous, and insolent

---

[2] Sanai was also found to have violated RPC 3.2 (delaying litigation), RPC 8.4(a) (violating or attempting to violate the RPCs), and RPC 8.4(n) (conduct demonstrating unfitness to practice law). 177 Wn.2d at 746.

20

behavior be corrected. *Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 424, 63 P.2d 397 (1936).

The hearing officer recommended that Sanai be disbarred. *Sanai*, 177 Wn.2d at 759. The hearing officer also found that Sanai's behavior during the hearing constituted an aggravating factor. *Id* at 770. It is unclear whether any mitigating factors were found. *Id*. The Board unanimously recommended that Sanai be disbarred. *Id*. at 759. We agreed and disbarred Sanai. *Id*. at 770.

Here, Cottingham's misconduct and culpability is similar to that in *Sanai*. However, because Cottingham was charged with fewer violations, none of which included the willful disobedience of a court order, and had a long history of being discipline-free, an 18-month suspension is proportionate when compared to Sanai's disbarment.

Similarly, in *In re Disciplinary Proceeding Against Scannell*, the hearing officer found three counts of misconduct: one count of failing to obtain written consent regarding a conflict of interest and two counts of filing frivolous pleadings and frustrating the disciplinary proceedings against him. 169 Wn.2d 723, 735-36, 239 P.3d 332 (2010). The hearing officer recommended suspension, but the Board recommended disbarment upon finding that the frivolous filing violations were intentional. *Id*. at 736.

This court found that Scannell violated former RPC 1.7 by negligently failing to obtain written consent regarding a conflict of interest and that he violated RPC 3.1 and RPC 8.4(*l*) by intentionally filing frivolous pleadings with the purpose of frustrating

and delaying the disciplinary proceedings against him. *Id.* This court disbarred Scannell, finding that intentionally violating RPC 3.1 and 8.4(*l*) warranted disbarment. *Id.* at 748. Scannell's behavior was especially troubling in the context of a disciplinary hearing, where it "poses a serious threat to lawyer self-regulation." *Id.* at 728. We noted that "[i]f every lawyer subject to a disciplinary investigation were as intransigent as Scannell has been, disciplinary proceedings would be expensive, long, and hard-fought procedural wars that might or might not be effective at uncovering wrongdoing and protecting the public." *Id.* at 745.

Here, Cottingham's misconduct and culpability is comparable to Scannell's—both filed frivolous pleadings and did so intentionally. However, the context of the pleadings differs significantly—Scannell filed frivolous pleadings with the purpose of frustrating the disciplinary proceedings against him, while Cottingham's misconduct took place within the context of a land dispute with his neighbor. As we noted in *Scannell*, the presumptive sanction for intentionally obstructing a disciplinary proceeding is disbarment. *Id.* at 744 (citing ABA STANDARDS 7.1 (recommending disbarment for knowing violations of ethical rules with intent to benefit the lawyer, if the violations cause serious injury to the legal system)). In contrast, the presumptive sanction for Cottingham's misconduct is suspension. *See* ABA STANDARDS 6.22 ("Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding."). Additionally, there were four aggravating factors in both cases. However, Cottingham had four

mitigating factors, while Scannell had one, which applied only to the RPC 1.7 violation. Scannell, 169 Wn.2d at 746. Thus, Cottingham's 18-month suspension is proportionate to Scannell's disbarment.

Cottingham fails to engage in any comparative analysis of similarly situated cases and has failed to meet his burden of proving that an 18-month suspension is disproportionate. Nonetheless, the suspension is proportionate when compared to similarly situated cases. We suspend Cottingham from the practice of law for 18 months.[3]

## CONCLUSION

The unchallenged findings of fact support the conclusion that Cottingham knowingly and intentionally violated RPC 3.1, 4.4(a), and 8.4(d) by engaging in frivolous litigation with the intent to harass his neighbors, which injured them and interfered with the administration of justice. We adopt the recommendation of the hearing officer and the Board and impose on Cottingham the 18-month suspension recommended by the hearing officer and by the Board.

---

[3] The Board assessed ODC's costs and expenses of $5,603.53 against Cottingham under ELC 13.9(e). Cottingham contends that this was an abuse of discretion. Under ELC 13.9(a), ODC's costs may be assessed against a sanctioned respondent attorney. Thus, the Board did not abuse its discretion by entering the ELC 13.9(e) order. We affirm the Board's assessment of costs. Cottingham also moves for an award of attorney fees under 42 U.S.C. § 1983 or RCW 4.84.350. Cottingham Appeal Br. at 48-49. This action was not a civil rights action brought under 42 U.S.C. § 1983, nor was it judicial review of an agency action under RCW 4.84.350. Rather, this was a disciplinary proceeding conducted under the ELC, which does not include a provision for awarding attorney fees to respondent lawyers. See ELC 13.9. Furthermore, Cottingham did not prevail in this action. We deny the motion.

_____
Wiggins, J.

WE CONCUR.

_____    _____
Fairhurst, C.J.                                Stephens, J.

_____    _____
Johnson, J.                                   González, J.

_____    _____
Owens, J.                                     Gordon McCloud, J.

_____    _____
Madsen, J.                                   Yu, J.